UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
WAHEED SALEH,                               :      06 Civ. 1007 (SHS)
                                            :
                    Plaintiff,              :
                                            :      OPINION
        -against-                           :
                                            :
THE CITY OF NEW YORK, KEVIN NICHOLSON,      :
KISHON HICKMAN, and JOHN DOES I-II,         :
                                            :
                    Defendants.             :
------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

Plaintiff Waheed Saleh brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants – the City of New York and four law enforcement officers – deprived him of his right to petition the government for a redress of grievances in violation of the First Amendment to the U.S. Constitution. Defendants now move pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment in their favor. Because Saleh's retaliation claim against the individual officers cannot be resolved as a matter of law based on the evidentiary record before this Court, defendants' motion is denied with respect to the individual defendants. Saleh has failed, however, to produce sufficient evidence for a jury to find the City of New York liable for the alleged acts of retaliation; therefore, defendants' motion for summary judgment is granted with respect to the City of New York.

I.      BACKGROUND

The following facts are undisputed. Waheed Saleh entered the United States on November 24, 2000 and, as a visitor, was authorized to stay in this country for six months. (Defs.' Local Civil Rule 56.1 Statement of Undisputed Facts ("Defs.' 56.1") ¶ 5;

1

Pl.'s Response to Defs.' Local Civil Rule 56.1 Statement of Undisputed Facts ("Pl.'s 56.1") ¶ 5.) At the conclusion of that six-month period, however, Saleh did not return to his home country; nor had he obtained permission to remain in the United States. (Defs.' 56.1 ¶ 6; Pl.'s 56.1 ¶ 6.)

Two and one half years later – on November 25, 2003 – Police Officer Kishon Hickman of the New York City Police Department ("NYPD") issued Saleh a summons for disorderly conduct. (Defs.' 56.1 ¶ 12; Pl.'s 56.1 ¶ 12.) A subsequent record check indicated that Saleh was the subject of several open warrants, and acting on that information, Hickman arrested him. (Defs.' 56.1 ¶ 13; Pl.'s 56.1 ¶ 13.) Within two weeks, Hickman issued Saleh another summons, this time for double parking. (Defs.' 56.1 ¶ 14; Pl.'s 56.1 ¶ 14.)[1] Saleh, in turn, lodged a complaint against Hickman with the Civilian Complaint Review Board ("CCRB") on December 19, 2003, alleging essentially that Hickman was harassing him. (Defs.' 56.1 ¶ 15; Pl.'s 56.1 ¶ 15.) Over the course of the next year, Saleh received at least one more summons, for disorderly conduct, from the NYPD. (Defs.' 56.1 ¶¶ 17, 19; Pl.'s 56.1 ¶¶ 17, 19.)

On December 20, 2004 – one year after filing the CCRB compliant – Saleh was arrested for overstaying his visa, and the Bureau of Immigration and Customs Enforcement ("ICE") placed him in removal proceedings.[2] (Defs.' 56.1 ¶¶ 8, 11; Pl.'s 56.1 ¶¶ 8, 11.) Thereafter, Saleh continued to file complaints against Hickman, including two with the NYPD Internal Affairs Bureau in June 2005, again alleging harassment by Hickman. (Defs.' 56.1 ¶¶ 25-26; Pl.'s 56.1 ¶¶ 25-26.)

---

[1] Hickman may have issued Saleh a third summons, but the record is unclear on that issue. (See Ex. 1 to Decl. of Joseph D. Keller dated Aug. 10, 2007 at 148-51.)
[2] The parties dispute whether Saleh was arrested by ICE alone (Defs.' 56.1 ¶ 10) or by ICE in conjunction with the NYPD (Pl.'s 56.1 ¶ 10).

Saleh then commenced this section 1983 action in early 2007, alleging that Hickman and three other NYPD officers – defendants Kevin Nicholson and two officers whose names he does not know – contacted federal immigration authorities in retaliation for Saleh's filing of the December 19, 2003 CCRB complaint. (Compl. ¶ 26.) Saleh contends that the officers' report of his immigration status violated his rights to freedom of speech and to petition the government secured by the First Amendment to the U.S. Constitution.[3] The City of New York is named as a defendant in this action pursuant to the doctrine of municipal liability.

After full discovery in this action, defendants now move for summary judgment pursuant to Fed. R. Civ. P. 56. They contend that, as a matter of law, (1) Saleh cannot prove the necessary elements of his retaliation claim, (2) the individual defendants are entitled to qualified immunity, and (3) no evidence supports municipal liability.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); LaFond v. Gen. Physics Serv. Corp., 50 F.3d 165, 171 (2d Cir. 1995). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). When determining whether a genuine issue of material fact exists, the Court "is to resolve all ambiguities and draw all

---

[3] Saleh also asserted a claim pursuant to the New York State Constitution, but that claim has been withdrawn. (Pl.'s Mem. in Opposition to Summary Judgment at 25.)

3

permissible factual inferences in favor of the party against whom summary judgment is sought." Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004); see also LaFond, 50 F.3d at 171.

Nevertheless, the party opposing summary judgment "must offer some hard evidence" in support of its factual assertions, D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998), such that "'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party,'" Golden Pac. Bancorp v. F.D.I.C., 375 F.3d 196, 200 (2d Cir. 2004) (quoting Anderson, 477 U.S. at 249). Evidence that is "merely colorable" or "not significantly probative" is insufficient to prevent a court from granting summary judgment. Anderson, 477 U.S. at 249-50. Thus, mere "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996).

B. Saleh's Retaliation Claim Does Not Fail as a Matter of Law.

Defendants contend that Saleh cannot prove all the elements of his retaliation claim based on the record in this action. To prevail on a retaliation claim, a plaintiff must show: "'(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (quoting Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001)). The parties do not contest the existence of the first element, but the second and third elements are very much in dispute.

Defendants maintain that the second element – that defendants took adverse action against Saleh – cannot be established unless Saleh shows that his speech was

actually chilled by the alleged retaliatory act, but Saleh cannot do so, according to defendants, because the factual record unequivocally contradicts such a showing. With respect to the third element, defendants urge two reasons for the Court to find insufficient causation: First, they contend that because probable cause supported reporting Saleh to ICE – i.e., defendants' reasonable belief that Saleh had overstayed his visa – a fact-finder is barred from concluding that it was Saleh's filing of the CCRB complaint that caused defendants to report him to ICE. Second, defendants assert that ICE's investigation of Saleh was sufficiently independent of defendants' alleged retaliatory act to break the causal chain.

For the reasons described below, however, this Court does not find that Saleh is barred as a matter of law from proving his retaliation claim at trial, and therefore defendants are not entitled to summary judgment on that basis.

> 1. *Saleh Need Not Prove That His Speech Was Actually Chilled to Prevail on His Retaliation Claim.*

As set forth above, the second element of Saleh's retaliation claim is that defendants took adverse action against him. See Gill, 389 F.3d at 380. Defendants contend that an act cannot constitute adverse action unless it actually chills plaintiff's speech. Saleh is unable to show that his speech was actually chilled, according to defendants, because, far from being chilled, he in fact continued filing complaints against NYPD officers – including defendant Hickman – even after his immigration status was allegedly reported to ICE. Defendants conclude, therefore, that Saleh's retaliation claim must fail as a matter of law.

Saleh disputes defendants' interpretation of the record. Pointing to evidence – including his own deposition testimony – that he contends would permit a jury to find

that his speech was chilled notwithstanding his post-retaliatory complaints against the NYPD, Saleh frames the issue as a disputed question of fact to be resolved at trial.

This Court, however, need not determine whether Saleh is able to put forth sufficient evidence to show that his speech was actually chilled by defendants' conduct because no such requirement governs his retaliation claim.

In <u>Gill</u>, the U.S. Court of Appeals for the Second Circuit explained that certain retaliation claims – specifically, claims against public officials – call for a "subjective test to gauge both the nature and the extent of the alleged injury," while others – claims by prisoners – call for an "objective test without regard for whether the plaintiff himself was actually chilled." 389 F.3d at 381. When a subjective test provides the appropriate standard, a court must conduct an inquiry into whether plaintiff's speech was actually chilled by the retaliatory conduct. <u>Id.</u> Under the objective test, however, the relevant inquiry is whether the alleged retaliatory conduct "would deter a [person] of ordinary firmness from vindicating his or her constitutional rights," <u>id.</u> at 384, and not whether that particular plaintiff's speech was actually chilled.

The specific question facing the Second Circuit in <u>Gill</u> was whether a prisoner must satisfy a subjective or objective test to prevail on a claim of retaliation for filing an administrative grievance. The court offered three possible rationales in support of its decision to apply an objective standard: First, the court distinguished between retaliation claims alleging punishment for past speech and those complaining of suppression of future speech. The court explained that when the gravamen of a retaliation action is that the defendant tangibly punished the plaintiff for his speech, an objective standard is warranted. <u>Id.</u> at 382. When the case focuses instead on whether the defendant's actions

quelled the plaintiff's inclination to speak again in the future, a subjective standard provides the proper test.  Id.  Second, the court focused on injury: when the only injury alleged is the chilling of speech itself, a subjective test should govern the claim.  An objective test is more appropriate, however, when other, more tangible injuries are also claimed.  Id.  Third – and most directly relevant to Saleh's action – the court observed:

> [W]here a plaintiff alleges that the protected conduct at issue is the prior filing of a grievance or lawsuit against the defendant, it would be unfair in the extreme to rule that plaintiff's bringing of the subsequent claim in itself defeated his claim of retaliation.  If bringing the action demonstrates that the plaintiff has not been chilled – and has failed to meet the subjective test – then such a plaintiff could never seek redress for retaliation.

Id. at 383.  On this basis – which the court considered its "most narrow approach," id. at 384 – an objective standard governs cases where "the plaintiff brings suit based on an allegation that the defendant retaliated for the plaintiff's prior suit or grievance," id. at 383.

All three rationales set forth by Judge Calabresi in Gill support the application of an objective standard here.  First, this case is about punishment for past speech, not the inhibition of future speech.  The premise of plaintiff's retaliation claim is that defendants alerted federal officials to Saleh's problematic immigration status in an attempt to strike back at him for his having complained about police misconduct.  This action centers, therefore, on defendants' alleged retaliatory attempts to punish Saleh for his complaint and not on their attempts to limit Saleh's prospective speech.  Accordingly, this consideration points to the application of an objective standard to the claim.

Second, Saleh complains of a tangible injury: ICE commenced removal proceedings against him allegedly as a result of defendants' report to ICE.  Because

7

Saleh's claim entails an injury that is not only "the putative chilling itself," id. at 382, the second Gill consideration also supports the application of an objective test.

The third consideration provides additional – perhaps the strongest – ground for adopting an objective standard in this case. If a subjective test governed retaliation claims involving the right to petition the government for a redress of grievances, it would have the perverse effect of barring all such claims. This is so because an individual retaliated against for filing a prior grievance would face a catch-22: he can file a retaliation lawsuit, demonstrating that his right to petition the government has not, in fact, been chilled, and thereby defeat his claim; or he can prove actual chilling – and thereby preserve his right to sue – only so long as he does not file suit. See id. at 383; Lashley v. Wakefield, 367 F. Supp. 2d 461, 467 (W.D.N.Y. 2005); Walker v. Pataro, No. 99 Civ. 4607, 2002 U.S. Dist. LEXIS 7067, at *30 (S.D.N.Y. Apr. 23, 2002). Under this regime, a retaliation lawsuit such as Saleh's is self-defeating because its very existence runs athwart of the subjective test for adverse action. An objective standard, then, provides the only workable means of determining whether a defendant's conduct constitutes adverse action in retaliation suits premised on a violation of the right to petition the government.

Having examined Saleh's retaliation claim pursuant to the three rationales presented by the Second Circuit in Gill, this Court concludes that an objective standard governs the question of whether defendants' alleged conduct constitutes adverse action. Under this standard, Saleh must show that the alleged retaliatory conduct "would deter a [person] of ordinary firmness from vindicating his or her constitutional rights," Gill, 389 F.3d at 384, and need not prove that his exercise of his First Amendment right to petition

the government was actually chilled by defendants' conduct. Therefore, defendants are not entitled to summary judgment on the basis of Saleh's purported inability to show actual chilling.

### 2. *The Existence of Probable Cause Has No Bearing on Saleh's Retaliation Claim.*

Defendants also contend that the rule announced by the U.S. Supreme Court in Hartman v. Moore, 547 U.S. 250, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006), bars Saleh's claim. In Hartman, the Supreme Court held that plaintiffs cannot establish causation in retaliatory prosecution actions unless they can allege and prove the absence of probable cause. Id. at 265-66. Defendants contend that Saleh cannot prove the absence of probable cause for the removal proceedings initiated against him, and therefore, his retaliation claim fails to satisfy the requirement set forth by the Hartman Court.

Defendants misread Hartman – or Saleh's complaint – as neither the holding nor the reasoning of that decision governs Saleh's claim. By its terms, the holding in Hartman applies only to retaliatory prosecution claims. Id. at 265. Saleh, however, has not filed a claim for retaliatory prosecution; indeed, he has not even filed a claim for "retaliatory removal," which would perhaps present a closer question of whether Hartman governed this case. Saleh contends instead that the defendants reported his immigration status to ICE to punish him for filing a grievance against Officer Hickman. Thus, Saleh does not allege that he has been prosecuted in retaliation for his CCRB report; he alleges only that defendants lodged a retaliatory report against him with ICE. His claim, therefore, does not entail a retaliatory prosecution or any similar proceeding and for that reason, does not fall squarely within the scope of Hartman.

Nor does the Supreme Court's rationale in <u>Hartman</u> suggest that this Court impose here the requirement that the absence of probable cause be alleged and proven. Recognizing the "complexity of causation" presented by retaliatory prosecution claims, <u>id.</u> at 265, the Supreme Court observed, "[s]ome sort of allegation, then, is needed both to bridge the gap between the nonprosecuting government agent's motive and the prosecutor's action, and to address the presumption of prosecutorial regularity," <u>id.</u> at 263. The problems posed by retaliatory prosecution claims, according to the Supreme Court, are two-fold: first, the retaliatory animus of the non-prosecuting defendant must be linked to the presumably independent acts of the prosecutor, who is immune from liability for the decision to prosecute; and second, plaintiffs must overcome the "longstanding presumption of regularity accorded to prosecutorial decisionmaking." <u>Id.</u> at 262-63.

Neither of these concerns is implicated by Saleh's claim. First, the retaliatory animus and retaliatory act at issue here are both attributable to the same defendants – the policemen – and therefore this case does not raise the difficulty of connecting "the retaliatory animus of one person and the action of another." <u>Id.</u> at 262. Second, Saleh's claim does not challenge the presumption of prosecutorial regularity because the claim turns on the motive animating defendants' alleged report of Saleh's immigration status to ICE, and not the legitimacy of any prosecutorial decision-making. Accordingly, the rationale supporting the <u>Hartman</u> decision does not encompass Saleh's retaliation claim.

Because retaliatory prosecution claims pose unique difficulties that are absent from this case, <u>Hartman</u>'s requirement that a lack of probable cause be shown does not

10

apply to Saleh's claim and therefore provides no basis to grant summary judgment in defendants' favor.[4]

        3.    *The Actions of ICE Do Not Break the Chain of Causation.*

For similar reasons, the Court finds that the independent acts of ICE do not disrupt the chain of causation that Saleh must establish to prove retaliation. Defendants contend that the decision to initiate removal proceedings was made independently by ICE and therefore cannot be attributed to defendants' conduct. In support of their position, defendants rely on Townes v. City of New York, 176 F.3d 138, 147 (2d Cir. 1999), in which the Second Circuit observed, "It is well settled that the chain of causation between a police officer's unlawful arrest and a subsequent conviction and incarceration is broken by the intervening exercise of independent judgment."

As discussed above, however, Saleh does not contend that the commencement of removal proceedings against him constitutes the adverse action at issue in this case. Instead, Saleh bases his retaliation claim on defendants' alleged report to ICE, and therefore must establish a causal connection between his protected speech – filing the CCRB complaint against Hickman – and the alleged adverse action – defendants' report of his immigration status to ICE. See Gill, 389 F.3d at 380; cf. Contreras v. Corinthian Vigor Ins. Brokerage, 103 F. Supp. 2d 1180, 1186 (N.D. Cal. 2000) ("[R]eport[s] to the INS or the SSA of a former employee's undocumented status . . . constitute adverse actions under the [Fair Labor Standards Act]."). With respect to this causal connection, ICE's decision to commence removal proceedings against Saleh is irrelevant. Because it has no bearing on Saleh's ability to prove proximate cause in this action, ICE's

---

[4] Even if the existence of probable cause could defeat Saleh's claim, defendants have not shown that probable cause supported their report to ICE. See infra Part II.C.

11

independent decision to commence removal proceedings does not entitle defendants to summary judgment.

C. Defendants Are Not Entitled to Qualified Immunity.

The individual defendants also invoke qualified immunity in an attempt to defeat Saleh's retaliation claim. They contend that no reasonable NYPD officer could have known, based on contemporaneous caselaw, that the U.S. Constitution barred reporting an alien to ICE in retaliation for filing a police misconduct complaint. That contention is unpersuasive.

Qualified immunity shields governmental actors "'from suits for damages . . . unless their actions violate clearly-established rights of which an objectively reasonable official would have known.'" Zieper v. Metzinger, 474 F.3d 60, 67 (2d Cir. 2007) (quoting Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999)) (alteration in original). To determine whether a defendant can avail himself of qualified immunity, a court must engage in a two-step inquiry. First, it must "determine whether the facts alleged, taken most favorably to plaintiffs, demonstrate a violation of a constitutional right." Id. at 67. Second, the court examines "whether the defendants' actions violated clearly established constitutional rights of which a reasonable person would have known." Id.

Having conceded the first inquiry for the purpose of their qualified immunity analysis, defendants urge that (1) Saleh's right to be free of retaliation under the circumstances of this case was not clearly established and, in the alternative, (2) no reasonable police officer would have known of such a right.

*1. The Existence of Probable Cause Is Relevant Only to the Right to Be Free of Retaliatory Arrests and Prosecutions.*

Defendants contend that Saleh had no clearly established constitutional right to be free of the type of retaliation at issue in this case because Second Circuit law permits police officers to retaliate so long as they have probable cause for their retaliatory acts. In support of this position, defendants rely on Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001), in which the Second Circuit held that the existence of probable cause eviscerates a retaliatory arrest claim. Defendants maintain that because they had probable cause to suspect that Saleh had violated federal immigration laws, they could report him to ICE in retaliation for filing a CCRB complaint without violating the Constitution. Their position here is similar to their argument based on the Supreme Court's Hartman decision, which addressed retaliatory prosecution rather than retaliatory arrest; and it fails for the same reasons.

The absence of probable cause is required in retaliatory prosecution and retaliatory arrest claims because of the causal difficulties inherent in proving such claims. See Hartman, 547 U.S. at 265. As noted above, the presumption of prosecutorial regularity militates strongly against an inquiry into subjective motive when probable cause justifies an arrest or a prosecution, and as a result, "[a]n individual does not have a right under the First Amendment to be free from a criminal prosecution supported by probable cause that is in reality an unsuccessful attempt to deter or silence criticism of the government." Mozzochi v. Borden, 959 F.2d 1174, 1180 (2d Cir. 1992). This rule applies, however, only to claims of retaliatory arrest and prosecution. It does not afford police officers license to retaliate against the public in any manner they choose so long as probable cause supports their retaliatory acts.

13

The reason that the absence of probable cause is required for claims of retaliatory arrest and prosecution, but not for other retaliation claims, is that the presumption of prosecutorial regularity attaches to arrests and prosecutions, but not necessarily to other police conduct. Making arrests and conducting prosecutions are core duties of law enforcement, and both functions entail the exercise of considerable discretion. In light of the discretion entrusted to law enforcement officers, "courts presume that they have properly discharged their official duties." United States v. Armstrong, 517 U.S. 456, 465, 116 S. Ct. 1480, 134 L. Ed. 2d 687 (1996). Activity beyond these "official duties," however, entails no such presumption. In Kerman v. City of New York, 261 F.3d 229, 242 (2d Cir. 2001), for example, the Second Circuit did not require a plaintiff complaining of police retaliation in the form of an "involuntary overnight trip to Bellevue [Hospital]" to prove the absence of probable cause for that hospitalization. Instead, the case called for a "subjective motivation analysis" into the officer's "state of mind" to determine whether the plaintiff was hospitalized in retaliation for his criticism of the police. Id.

Similarly, no presumption of regularity applies here because, unlike making arrests and facilitating prosecutions, NYPD officers do not report the immigration status of individuals they encounter to ICE as part of their regular duties. First, NYPD officers are not charged with enforcing the nation's immigration laws. Section 3-02(b) of Title 43 of the Rules of the City of New York ("RCNY") states:

> Each agency shall designate one or more officers or employees who shall be responsible for receiving reports from such agency's line workers on aliens suspected of criminal activity and for determining, on a case by case basis, what action, if any, to take on such reports. No such determination shall be made by any line worker, nor shall any line worker transmit

14

information respecting any alien directly to federal immigration authorities.

A "line worker," defined as "a person employed by any City agency whose duties involve contact with the public," 43 RCNY § 3-01, encompasses each defendant NYPD officer in this case.

Second, Saleh offers strong evidence that Hickman and Nicholson had never before contacted ICE under circumstances similar to those at issue in this case. (See Decl. of Joseph D. Keller ("Keller Decl.") dated Aug. 10, 2007, Ex. 2 (Hickman Tr.) at 123, 144-45; Ex. 3 (Nicholson Tr.) at 74; Ex. 4 (Doepfner Tr.) at 72.) Unlike arrests and prosecutions, contacting ICE is not among the regular, routine functions of the NYPD or even of the defendant officers themselves. Accordingly, there is no reason to impose an absence of probable cause element here, and defendants cannot rely on the existence of probable cause to excuse a retaliatory report to ICE.

Even if the existence of probable cause blocked Saleh's claim, defendants have not shown that probable cause to support a report to ICE existed here, based on the undisputed facts of this case. Defendants contend that because Saleh was, in fact, unauthorized to remain in the United States, they had probable cause to report him to ICE. (Defs.' Mem. at 8-9, Defs.' Reply at 19-20.) Probable cause, however, does not depend on whether defendants were ultimately right about Saleh's immigration status; rather it requires a showing that defendants had "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that" Saleh was in the United States unlawfully. Jocks v. Tavernier, 316 F.3d 128, 135 (2d Cir. 2003) (internal quotation marks omitted). Defendants advance, however, only conclusory and post-hoc representations that

probable cause existed. They do not even attempt to set forth what "trustworthy information" gave rise to their belief that Saleh was in the United States illegally. Accordingly, defendants have not shown, based on the undisputed facts of this case, that probable cause supported a report of Saleh's immigration status to ICE.[5]

> 2. *A Reasonable Officer Would Have Known that Reporting Saleh to ICE in Retaliation for Filing a Police-Misconduct Complaint Violated the Constitution.*

Turning to defendants' second proposition – that no reasonable person would have known that reporting Saleh to ICE violated the Constitution – the Court rejects that contention as well. The Second Circuit has explained that "defendants are entitled to qualified immunity if it would not have been clear to a reasonable officer in their position that their conduct was unlawful." Zieper, 474 F.3d at 68. Defendants urge that a reasonable NYPD officer would have no reason to believe that alerting ICE to the presence of illegal aliens constitutes a constitutional violation. By so framing the issue, however, defendants miss the point. This case is not about whether NYPD officers can alert ICE when they encounter illegal aliens, but whether they can retaliate against individuals who file police-misconduct grievances by making referrals to ICE.

With respect to such retaliation, the law is clear: "[t]he rights to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment." Gagliardi v. Village of Pawling, 18 F.3d 188, 194 (2d Cir. 1994). When officials take adverse action against those who exercise this right, they can be held liable for a constitutional violation. Id. at 194-95. A defendant's ability to justify the purported adverse action on non-retaliatory grounds is irrelevant because "'[a]n act in retaliation for

---

[5] To the extent that defendants base probable cause on a voluntary admission by Saleh of his immigration status (see Keller Decl., Ex. 3 (Nicholson Tr.) at 10), Saleh denies that the admission occurred (see Keller Decl., Ex. 1 (Saleh Tr.) at 256), raising a factual issue for trial.

16

the exercise of a constitutional right is actionable under section 1983 even if the act, when taken for different reasons, would have been proper.'" Franco v. Kelly, 854 F.2d 584, 590 (2d Cir. 1988) (quoting Howland v. Kilquist, 833 F.2d 639, 644 (7th Cir. 1987)); see also Kerman, 261 F.3d at 242 (section 1983 claim against police officers can be based on "involuntary overnight trip to Bellevue" Hospital in retaliation for exercising First Amendment rights).

Accordingly, it may be sound practice for NYPD officers to alert ICE when they encounter unlawful aliens under normal circumstances, but when they do so for retaliatory purposes, they run afoul of the Constitution.[6] In light of this firmly established law, it would have been clear to a reasonable officer that reporting Saleh to ICE in retaliation for filing a CCRB complaint violated the First Amendment to the Constitution. Accordingly, the individual defendants are not entitled to qualified immunity.[7]

D. Saleh Has Not Identified Sufficient Evidence to Support a Finding of Municipal Liability.

Saleh seeks to impose liability on the City of New York for failing to train NYPD officers – including defendants Hickman and Nicholson – to respect the rights of immigrants. Inadequate police training "'may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" Jenkins v. City of New York, 478 F.3d 76, 94 (2d Cir. 2007) (quoting City of Canton v. Harris, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L.

---

[6] In an analogous scenario involving retaliation for union activity, the Supreme Court explained, "It is only when the evidence establishes that the reporting of the presence of an illegal alien employee is in retaliation for the employee's protected union activity that the [National Labor Relations] Board finds a violation of § 8(a)(3) [of the National Labor Relations Act]. Absent this specific finding of antiunion animus, it would not be an unfair labor practice to report or discharge an undocumented alien employee." Sure-Tan, Inc. v. NLRB, 467 U.S. 883, 895-96, 104 S. Ct. 2803, 81 L. Ed. 2d 732 (1984).
[7] Whether defendants actually reported Saleh to ICE and whether retaliatory animus motivated defendants' alleged report remain contested factual questions to be resolved at trial. The Court takes no position on such disputed issues of fact. Indeed, those facts will constitute the core of any trial.

Ed. 2d 412 (1989)). In order to prove that New York City's failure to train constitutes deliberate indifference, Saleh must satisfy three requirements:

> First, the plaintiff must show that a policymaker knows to a moral certainty that her employees will confront a given situation. Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation. Finally, the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.

Id. at 94 (internal citations and quotation marks omitted).

To defeat summary judgment, "plaintiffs must 'identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation.'" Id. (quoting Green v. City of New York, 465 F.3d 65, 81 (2d Cir. 2006)). Saleh, however, has failed to identify any deficiency in training that is "closely related" to his constitutional injury. He has brought forth no evidence whatsoever showing that the City of New York provides inadequate, flawed or otherwise deficient training on the impermissibility of retaliating against individuals who complain of police misconduct.

Instead, Saleh accuses the city of failing to train NYPD officers regarding proper procedures for interacting with immigrants. As discussed above, however, this is not a case about immigrant relations or NYPD-ICE protocols. This is a retaliation case rooted in Saleh's First Amendment right to petition the government for a redress of grievances, and it is of no moment that the retaliatory act in this case came in the form of a report to ICE rather than in some other manner. Were it otherwise, all retaliation training would be deficient unless every conceivable manifestation of adverse action were enumerated and specifically prohibited. The strictures of municipal liability are not so exacting. See

18

Green, 465 F.3d at 82 (rejecting failure-to-train theory because defendant's guidelines "specifically and clearly informed" personnel of general principle at issue such that defendant did not have "a further training obligation").

Because Saleh has failed to set forth any facts establishing that the retaliation he suffered was a consequence of the city's failure to adequately train its police officers, the City of New York is entitled to summary judgment dismissing Saleh's retaliation claim.

## III. CONCLUSION

For the reasons stated above, (1) Saleh's retaliation claim cannot be resolved as a matter of law based on the undisputed facts of this case, (2) the individual defendants are not entitled to qualified immunity, and (3) Saleh has failed to identify sufficient evidence to impose liability on the City of New York. Accordingly, defendants' motion for summary judgment of dismissal should be granted as to the City of New York and denied as to the individual defendants.

Dated: New York, New York
December 17, 2007

Sidney H. Stein, U.S.D.J.